Filed 7/8/26  Raz v. Beith David Educational Center CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RAFAEL RAZ, et al., <br><br> Plaintiffs, Cross-Defendants, and Appellants, <br><br> v. <br><br> BEITH DAVID EDUCATIONAL CENTER, <br><br> Defendant, Cross-Complainant, and Respondent. | B341572 <br><br> (Los Angeles County Super. Ct. No. 24STCV08540) |

APPEAL from orders of the Superior Court of Los Angeles County, Upinder S. Kalra, Judge.  Affirmed in part, reversed in part.

Schreiber & Schreiber, Edwin C. Schreiber, Eric A. Schreiber, and Ean M. Schreiber for Appellants.

Hooman Moshe Gideon, in pro. per., for Appellant.

Farivar Law Firm and Fahim Farivar for Respondent.

This action involves a dispute over the governance of a nonprofit religious corporation, Beith David Educational Center (Beith David). Plaintiffs and appellants Rafael Raz and Shlomo Sherf, along with several other plaintiffs, initiated this action by filing a petition to void a Board Member Election held on December 3, 2023. Beith David filed a cross-complaint and then a first amended cross-complaint (the FACC) against appellants and other plaintiffs for, among other things, alleged misappropriation of Beith David funds and other alleged financial misconduct to the detriment of Beith David.

Appellants moved to strike nine of the seventeen causes of action in the FACC under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] They also moved for an order disqualifying Beith David's counsel and his firm based on an alleged conflict of interest and the advocate-witness rule.

The trial court denied both motions. With respect to the special motion to strike, the court concluded appellants did not meet their burden of demonstrating the conduct forming the basis of the underlying FACC involved protected activity within the meaning of section 425.16. As to the motion to disqualify, the trial court found neither the advocate-witness rule nor counsel's dual roles (i.e., a Beith David Board Member and counsel for Beith David) mandated disqualification.

---

[1] SLAPP is the acronym for strategic lawsuit against public participation. All further undesignated statutory references are to the Code of Civil Procedure.

2

Appellants appeal from the orders denying the motions.[2] We conclude the trial court did not abuse its discretion in denying the motion to disqualify counsel. We further conclude the trial court correctly denied appellants' motion to strike causes of action in their entirety because those claims are primarily based on allegations of financial misconduct that is not protected under the anti-SLAPP statute. However, we agree with appellants that allegations in support of some of the causes of action regarding appellants' attempt to overturn the election must be stricken. We therefore reverse the order, in part, denying the anti-SLAPP motion, and direct the court to strike specific allegations in the FACC as we shall detail below. On remand, the court shall determine whether appellants are prevailing parties on the anti-SLAPP motion entitled to attorney's fees, or whether appellants' partial success was of no practical effect and, therefore, attorney's fees are not required. We express no view on this issue that lies within the broad discretion of the trial court.

---

[2] Cross-defendant Hooman Moshe Gideon, in pro per, also purports to appeal from the orders denying the motions by filing his own notice of appeal and a joinder to appellants' opening brief. We grant Beith David's motion to dismiss Gideon's appeal for lack of standing. The trial court denied Gideon's motion to join in appellants' anti-SLAPP motion (and he does not appeal from this ruling), and he did not file any motion or joinder to disqualify counsel. He has therefore not been aggrieved by an appealable order. (§ 902.)

3

# BACKGROUND

## A.     The FACC's Allegations

The FACC consists of 50 pages of allegations, along with hundreds of pages of exhibits.[3]  We summarize the facts and allegations as relevant here.

Beith David was founded in 1996 as a non-profit corporation.  It was organized for religious purposes and operates a synagogue serving the local Jewish community in Tarzana.  Although Beith David established a Board of Directors when it was founded, due to the nature of its purpose as a religious organization and the close-knit community it serves, its Board members did not always operate under strict protocol and in accordance with its bylaws.

Hooman Moshe Gideon independently operated a catering and takeout business utilizing the kitchen facilities of Beith David.  In return for the co-share of Beith David's kitchen facilities, Gideon agreed to pay a fee to Beith David and "contribute a significant portion towards Beith David's utility costs."

In or around 2012-2013, Beith David was suffering from financial troubles and had debts totaling approximately $1.7 million.  At the time, Farhad Farzan, with the consent of the

---

[3]     The Code of Civil Procedure provides that a complaint or cross-complaint shall contain a "statement of the facts constituting the cause of action, in ordinary and concise language" (§ 425.10, subd. (a)(1)), without including allegations that are "not essential" to a cause of action (§ 431.10, subd. (b)(1)).  The FACC violates these rules.  Rather than setting forth a short and plain statement of the ultimate facts that support Beith David's causes of action, the FACC includes voluminous, superfluous allegations.

4

Board, directed all of the then Board members to resign and declared he would be taking over all financial matters for Beith David. Specifically, on August 6, 2012, many of the Board members and trustees of Beith David, including Raz, Ken Pezeshki, and Javid Rad were either terminated or resigned with almost all responsibilities of Beith David being delegated to Farzan.

In late-2019, Raz, Pezeshki and several others orchestrated a plan that effectively coerced Farzan into relinquishing his position at Beith David. Raz and Pezeshki began having issues with Gideon, including issues with past due rent and utilities. In late August 2023, Raz exchanged emails with Gideon in which they both accused each other of wrongdoing. At this stage, Raz and Pezeshki concluded that forming a legitimate Board was essential to confront and manage the situation with Gideon.

Beith David held an election for the Board of Directors. Fahim Farivar received the highest number of votes in the election. There was initially a spirit of unity and collaboration among the new Board members. This allegedly changed, however, when Raz began to feel the new Board was real and he may lose his absolute control over Beith David, having to share responsibilities. Thus, Raz, with the support of some of his allies, "began to propagate a baseless claim of 'election fraud.' "

The Board began setting agendas, organizing events for the community, and discussed how to proceed with Gideon as an independent contractor of Beith David. The Board submitted a proposal to Gideon by providing him with a draft lease agreement, "but to no avail." On January 9, 2024, Raz and other Board members signed the Board minutes agreeing to events that occurred during the Board meeting on January 3, 2024.

5

In the meantime, the Board was unable to reach any agreement with Gideon because he was essentially asking for his business to use Beith David's kitchen without paying Beith David. Despite numerous efforts, Gideon did not agree to any proposal by the Board and continued to claim he was not going to agree to any terms and he was planning to leave by May 31, 2024. Immediately after the impasse with the Board, Gideon started spreading false information about the election and the Board. Raz's attitude then "completely changed" and he started defending Gideon and opposing any proposition to legally evict Gideon.

On March 12, 2024, Raz "unilaterally and without providing any notice, removed all of [ ] Farivar's online banking access to Beith David's accounts."

Beith David held a general Board meeting on March 14, 2024, during which various positions of the Board were filled, including Chairperson, Vice Chair, Treasurer, and President. Pezeshki and Sherf also voted for the positions. The following day, a statement was released by Beith David to the community, announcing the positions, "hoping to take steps towards peace and unity." "However, shortly after these events," Raz, Pezeshki, Gideon, and Sherf "continued to disrupt the governance of the [B]oard through various acts and omissions."

Raz and Gideon colluded to engage in "tactics seemingly intended to coerce [B]oard members." Raz and Gideon are allegedly "taking actions to ensure the newly duly elected [B]oard would fall apart, so that they would be able to advance their own personal agenda, [while] continuing to exploit Beith David for their own personal gain, advantage, and to the detriment of [the] community."

6

On March 24, 2024, Beith David was hosting a Purim party for the community and retained Simon Caterer to cater the food. Raz, however, spoke to Simon Caterer and told him it was "not a proper time for him to contract with Beith David to provide catering services." Raz was "intentionally trying to sabotage a potential profitable catering agreement between Simon Caterer and Beith David and intentionally breached his fiduciary duty to Beith David."

On April 5, 2024, Farivar emailed all the Board members reminding them of their obligations and their fiduciary duties to Beith David. Farivar expressed concern regarding several legal and regulatory compliance issues, including reporting obligations for non-profit organizations. The email also "highlighted concerns regarding zoning, health codes, and business licenses, particularly related to the operating of catering services of [ ] Gideon at Beith David" and Gideon's "continued non-payment of rents and obligations." Farivar "called for a collective effort to ensure Beith David's operational integrity and legal standing and urged regular meetings to audit practices, seek expert advice, and create action plans to resolve issues."

The day before Farivar emailed the Board, on April 4, 2024, appellants, along with other plaintiffs, filed a "Verified Petition for an Order Voiding Purported Election of Non-Profit Corporation and Order a New Properly Supervised Election and Verified Complaint for Injunctive Relief" (the petition). The FACC alleges the filing of the petition was "frivolous and in bad faith" and that appellants "agreed to the legitimacy of the Election and signed documents agreeing not to challenge the Election." Appellants are "aware the Election was conducted legally with fairness and integrity. In fact, [ ] Raz oversaw the

entire election process" and appellants never "expressed any concern with the Election until after the results were obtained."

The FACC further alleges appellants have "intentionally caused harm to Beith David by either illegally misappropriat[ing] and/or allow[ing] misappropriation of Beith David funds . . . . Further, four of the Cross-Defendants ran for election to the [B]oard of [D]irectors and lost–now seeking legal recourse to change election results which did not go in their favor. It seems Cross-Defendants are colluding in a coordinated effort to overturn a legitimate election and continue their financial control and abuse of [Beith David]." Raz and Gideon continue to "intentionally bully, threaten, and/or intimidate the [B]oard members in an attempt to hold onto [their] power and continue to take advantage of Beith David."

The FACC goes on to allege that the actions of Raz, Pezeshki, Sherf, and their associates raise "serious questions about their proclaimed commitment to the best interests of Beith David" and "[t]heir decision to sue the organization, emasculating it by taking over its accounts to make sure Beith David has no funds to defend itself, effectively leaving it without representation, alongside their failure to take necessary protective measures, starkly contradicts their claims of acting for the community's benefit."

The FACC states that on April 11, 2024, the trial court denied appellants' ex parte application for a preliminary injunction and temporary restraining order. The following week, Raz allegedly delivered a speech to the synagogue's congregants and intentionally provided "misinformation and false narratives to the congregants about Beith David and the current elected [B]oard" including that the Board members were invalidly

8

elected.  Raz "aimed to perpetuate his false narrative of election fraud, seeking applause and support for solely him and [ ] Pezeshki to continue managing the [synagogue], despite the presence of a duly elected [B]oard of [D]irectors."

The FACC alleges seventeen causes of action against appellants, Gideon, Sherf, Pezeshki and other individuals sounding in both contract and tort.

## B.     The Special Motion to Strike

Appellants moved to strike the following causes of action in the FACC under the anti-SLAPP statute: breach of the covenant of good faith and fair dealing (second cause of action); breach of fiduciary duty (third cause of action); fraud (fourth cause of action); conspiracy to commit fraud (fifth cause of action); removal of director from non-corporation for malfeasance (seventh cause of action); aiding and abetting (tenth cause of action); intentional interference with prospective economic interests (fourteenth cause of action); intentional interference with current business advantage (fifteenth cause of action); and declaratory relief (seventeenth cause of action).  They alternatively moved to strike specific allegations in the "Statement of Facts" section of the FACC and other specific allegations alleged in support of each of the nine causes of action.

After a hearing on the special motion to strike, the trial court denied the motion.

## C.     Motion to Disqualify Counsel

In a separate motion, appellants moved to disqualify Farivar and his law firm from representing Beith David.  They argued Farivar has a conflict of interest based on his role as Chairman of the Board of Directors of Beith David and because

9

he is an individual defendant in the action.[4]  The trial court found that disqualification was unwarranted because Beith David, through its Board of Directors, "executed an informed written consent as to the potential dual nature of Farivar's role in the instant matter."  It further stated that "should the FACC proceed to trial it will be a bench trial" and the "court is not concerned that it will confuse Farivar's arguments as evidence."  The court, therefore, denied the motion.  The court noted at the hearing, however, that it believed it could "separate counsel as a witness and an advocate" but if the situation became "impractical" in the future, the issue could be raised again at trial.

Appellants timely appealed from the order denying their anti-SLAPP motion and the order denying their motion to disqualify counsel.[5]

## DISCUSSION

## I.   ANTI-SLAPP MOTION

### A.   The Anti-SLAPP Statute and Standard of Review

The Legislature enacted section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits or individual causes of action that are brought to chill

---

[4]   Appellants also argued a conflict existed based on Farivar being a cross-complainant, but the FACC removed Farivar as a cross-complainant, leaving only Beith David.

[5]   We deny both Beith David's motion to dismiss the appeal on procedural grounds, and appellants' request for sanctions for filing a frivolous motion to dismiss.

10

the valid exercise of a person's constitutional rights.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; see *Baral v. Schnitt* (2016) 1 Cal.5th 376, 395 (*Baral*); § 425.16, subd. (b)(1).)

The anti-SLAPP statute requires a two-step process: first, the moving party must establish that the lawsuit's claims are based on activity protected by the statute.  (*Briganti v. Chow* (2019) 42 Cal.App.5th 504, 508.)  The anti-SLAPP statute provides for four categories of protected activity.  (See § 425.16, subd. (e)(1) to (e)(4).)  "If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral, supra*, 1 Cal.5th at p. 384.)  "In making these determinations the court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'  (§ 425.16, subd. (b)(2).)" (*Briganti,* at p. 508.)

In "so-called mixed causes of action" cases—"that is, a cause of action that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not"— the moving party "must identify the acts alleged in the complaint that it asserts are protected and what claims for relief are predicated on them." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*).)  "In turn, a court should examine whether those acts are protected and supply the basis for any claims.  It does not matter that other unprotected acts may also have been alleged within what has been labeled a single cause of action; these are 'disregarded at this stage.' [Citation.] So long as a 'court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached' with respect to these claims." (*Bonni*, at

11

p. 1010.) " 'Allegations of protected activity that merely provide context, [however], without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute.' " (*Id*. at p. 1012; accord *Baral*, *supra*, 1 Cal.5th at p. 394 ["Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute"].)

If the nonmoving party cannot demonstrate that its claims based on protected acts are legally sufficient, "those particular allegations [of protected activity] will be stricken. Conversely, to the extent any acts are unprotected, the claim based on those acts will survive." (*Bonni*, *supra*, 11 Cal.5th at p. 1012.)

"The anti-SLAPP procedures are designed to shield a defendant's constitutionally protected *conduct* from the undue burden of frivolous litigation. It follows, then, that courts may rule on plaintiffs' specific claims of protected activity, rather than reward artful pleading by ignoring such claims if they are mixed with assertions of unprotected activity." (*Baral*, *supra*, 1 Cal.5th at p. 393.)

We review the trial court's decision to grant or deny an anti-SLAPP motion de novo. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

12

**B. The Allegations of Attempting to Overturn a Lawful and Legitimate Election in Support of the Second, Third, Fifth, Seventh, Tenth, Fourteenth, Fifteenth, and Seventeenth Causes of Action Must be Stricken**

1. *Prong 1: Whether Beith David's Claims are Based on Protected Activity*

Appellants contend nine causes of action in the FACC are based on their filing of the petition seeking to vacate the Beith David election and speech related to the filing of the petition. It follows, according to appellants, that those claims are based on protected activity under section 425.16(e)(1) and (e)(2) as written or oral statements made "before a . . . judicial proceeding" and/or "in connection with an issue under consideration or review by a . . . judicial body." Beith David does not dispute that statements, writings, and pleadings in connection with civil litigation constitute protected petitioning activity under the anti-SLAPP statute. It counters, however, that the FACC's claims arise from alleged financial misconduct, self-dealing, and interference with corporate governance—not the filing of the petition. They argue that any references to election-related speech or petitioning are merely incidental background rather than the injury-producing conduct.

Consistent with *Bonni* and *Baral*, we reviewed the FACC to determine whether Beith David's allegations regarding the petition supply the elements of the causes of action or merely provide context. First, we note that several of the allegations in the FACC identified by appellants do not refer to the filing of the petition, and thus, with respect to those allegations, appellants have not met their burden to demonstrate the conduct constitutes

13

protected activity.  For example, paragraph 48 alleges that Raz "with the support of some of his allies, began to propagate a baseless claim of 'election fraud.' "  Another paragraph identified by appellants in their motion, paragraph 63, provides: "It now seems to reflect a pattern of behavior resembling collusion between Mr. Gideon and Mr. Raz, who have engaged in tactics seemingly intended to coerce board members.  Many of these board members are young professionals unaccustomed to facing such aggressive levels of intimidation.  Clearly, Mr. Raz and Mr. Gideon are taking actions to ensure the newly duly elected board would fall apart, so that they would be able to advance their own personal agenda, with continuing to exploit Beith David for their own personal gain, advantage, and to the detriment of this community."  As the trial court aptly noted during the hearing on the motion, displeasure with the election "was expressed long before any lawsuit was filed[.]"  Thus, not all allegations in the FACC regarding appellants' displeasure with the election or their desire for the Board to "fall apart" constitute allegations based on filing a lawsuit, as appellants contend.

Second, we agree with Beith David that some of the allegations in the "Statement of Facts" referring to the filing of the petition explicitly merely provide context for the action.  For example, under the heading "Legal Action and Harassment," the FACC lists the procedural history of the lawsuit, including that appellants filed an ex parte application for an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order, which was denied, and that appellants' filing of the petition was frivolous and in bad faith because they did not express concern with the election until after the results were

14

obtained.  Appellants have not tied those allegations, however, to any elements of Beith David's claims.

Accordingly, we reject appellants' assertion that nine causes of action must be stricken in their entirety because the FACC incorporates by reference the general allegations in the "Statement of Facts."  We agree with appellants' alternative argument, however, that allegations of "attempting to overturn a fair and legitimate election" are subject to an anti-SLAPP motion because they refer to the filing of the petition (protected activity) and they support a claim for recovery.

Specifically, in support of the second and third causes of action for breach of covenant of good faith and fair dealing and breach of fiduciary duty, the FACC alleges that appellants "breached [their duty of loyalty, duty to use reasonable care, and their fiduciary duties by] attempting to overturn a lawful and legitimate election in contravention to the Beith David bylaws." In support of the fifth cause of action for conspiracy to commit fraud, the FACC alleges Raz, along with other cross-defendants "were part of a conspiracy to defraud Beith David by . . . [attempting] to overturn a lawful and legitimate election in contravention to the Beith David bylaws."  The seventh cause of action seeks to remove appellants from the Board of Directors in part based on the allegation that they recently "escalated such conduct in an attempt to overthrow a fair and legitimate election, to the detriment of the corporation and its members."  The tenth cause of action for aiding and abetting alleges that, through their concerted effort together, appellants "are attempting to overturn a lawful and legitimate election in contravention to the Beith David bylaws in an attempt to damage Beith David."  Similarly, in support of the fourteenth and fifteenth causes of action for

15

intentional interference with prospective economic interests and intentional interference with current business advantage, the FACC alleges appellants knowingly and intentionally engaged in conduct to disrupt a business relationship by, among other things, "attempting to overturn a fair and legitimate election, crippling Beith David's ability to function and advance its interests." Finally, in seeking declaratory relief, Beith David alleges that appellants are "collaborating in a coordinated effort to overturn a fair and legitimate election."

Although these allegations do not explicitly reference the petition, a fair reading of the FACC is that these allegations are based on appellants' filing of the petition to overturn the election. Appellants note the only way to overturn an election is by filing a lawsuit, and Beith David does not dispute this assertion.

Beith David instead argues the gravamen of its cross-claims is "alleged financial misconduct, misappropriation of funds, obstruction of corporate governance, and breaches of fiduciary duty—noncommunicative conduct that is not protected under section 425.16." Beith David further claims that "[e]ven if all references to [a]ppellants' statements and litigation conduct were excised from the pleading, Beith David's causes of action would remain independently viable because liability is based on [a]ppellants' alleged misappropriation of funds, obstruction of governance, and breaches of fiduciary duty—not on any protected speech or petitioning activity." We agree with Beith David on both of these points. But that does not change the fact that, as alleged, appellants' petitioning activity forms *one* of the bases for relief. Under *Bonni* and *Baral*, these allegations are subject to an anti-SLAPP motion, and the court must proceed to the second step of the analysis.

16

### 2. *Prong 2: Beith David Cannot Show a Probability of Prevailing on the Merits*

It is undisputed that any claims based on the filing of the petition are barred by the litigation privilege and, therefore, fail as a matter of law. (See Civ. Code, § 47, subd. (b).) Thus, under the standard set forth in *Bonni* and *Baral*, these particular allegations must be stricken.

To be clear, Beith David cannot base any of its claims for relief on appellants' filing of the petition to vacate the election or speech related to the contents of the petition. Beith David asserts none of its causes of action is based on the filing of the petition, and they are only seeking relief for financial misconduct. The manner in which the FACC is pled, however, demonstrates otherwise. Thus, the allegations described above regarding "overturning" an election, in support of the second, third, fifth, seventh, tenth, fourteenth, fifteenth, and seventeenth causes of action, must be stricken.[6] However, those causes of action survive to the extent they are also based on unprotected activity,

---

[6] Appellants also seek to strike allegations in support of the fourth cause of action for fraud. But those allegations do not reference overturning the election. Rather, the FACC alleges that Raz claims the election was "fixed and illegitimate" and Gideon makes "false statements about Beith David," including that the election was fraudulent. Appellants have not specifically demonstrated that these allegations are based on filing the lawsuit or otherwise constitute protected activity.

17

such as misappropriation of funds and misusing funds for appellants' own personal gain.[7]

### C. Attorney's Fees

Under section 425.16, subdivision (c), prevailing cross-defendants are "entitled to recover [their] attorney's fees and costs." However, not every cross-defendant "who obtains some relief on a special motion to strike is a [prevailing cross-defendant] for purposes of recovering fees and costs under the anti-SLAPP statute." (*Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 732.) "A [cross-defendant] who is only partially successful will generally be considered to have prevailed, but not if 'the results of the motion were so insignificant that [he or she] did not achieve any practical benefit from bringing the motion.' " (*Ibid.*)

Here, only a limited number of allegations shall be stricken from the FACC, as described above. But "[w]hether a partially successful cross-defendant achieved a sufficient benefit to qualify as a prevailing party lies within the broad discretion of the trial court." (*Gumarang v. Braemer on Raymond, LLC* (2025) 110 Cal.App.5th 370, 388.) On remand, the trial court shall determine the amount of attorney's fees appellants are entitled to, if any, for their partially successful motion.

## II. MOTION TO DISQUALIFY

Appellants contend the trial court erred by denying its motion to disqualify Farivar and his law firm on two grounds: (1) there is a conflict of interest based on his roles as Chairman of the Board of Beith David and counsel for Beith David; and (2) the

---

[7] On remand, the court shall consider whether any of the causes of action fail as a matter of law, either because certain allegations have been stricken, or on any other ground.

18

advocate-witness rule mandates disqualification. For the reasons discussed below, we discern no abuse of discretion. (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 [a trial court's decision on a disqualification motion is reviewed for abuse of discretion].)

### A.     Conflict of Interest

California Rules of Professional Conduct, rule 1.7(b) prohibits, without informed written consent from each affected client, a lawyer from representing a client if there is a significant risk that the lawyer's representation will be "materially limited by the lawyer's responsibilities to or relationships with another client" or "by the lawyer's own interests."

Here, Beith David's Board executed an informed written consent waiving any potential conflicts. Behrooz Natanzi, a Beith David Board member, submitted a declaration in opposition to the motion to disqualify Farivar, in which he declared that Farivar "explained the potential conflicts of interest" but the Board unanimously approved Farivar's continued representation. He further declared: "[I]t is evident that Mr. Farivar's actions have been in the best interest of Beith David. His voluntary efforts, financial contributions, and strategic legal representation were essential in navigating the challenges posed by the lawsuit. Disqualifying him would not only harm Beith David financially but also undermine the significant progress made in safeguarding Beith David's interests." According to Natanzi, disqualifying Farivar "would not only impose severe financial burdens on Beith David but would also undermine the progress made in stabilizing the organization. Mr. Farivar has fronted legal costs and fees out of his own resources, allowing Beith David to focus on its core

19

mission without the added strain of litigation expenses. Replacing him with new counsel at this stage would result in significant delays, increased costs, and the potential loss of strategic momentum, all of which would be detrimental to Beith David's ongoing recovery efforts."

Appellants do not clearly articulate the precise conflict other than to point out that Farivar is the Chairman of the Board of Beith David and Beith David's counsel. They claim that case law confirms that Farivar cannot simultaneously represent Beith David and be a director despite the fact that the Board "unanimously agreed that no [ ] conflict exists." The supposed case law appellants rely upon, however, is really an absence of case law. Appellants state they have "been unable to find any authority that an attorney can represent the corporate defendant, and represent the corporation on a cross-complaint which seeks attorney fees for the attorney and his law firm." An *absence* of authority cannot prove an affirmative point. And the supposed "analogous" case law cited by appellants involves facts materially different from those here. (See e.g. *Flatt v. Superior Court* (1994) 9 Cal.4th 275 [successive representation conflict where an attorney previously represented one client and later undertook representation adverse to the former client]; see also *Blue Water Sunset, LLC v. Markowitz* (2011) 192 Cal.App.4th 477 [derivative action during which the lawyer simultaneously represented a limited liability company and a member with conflicting interests].)

Accordingly, appellants have not met their burden on appeal to demonstrate the trial court acted in an arbitrary and capricious manner by declining to disqualify Farivar from

representing Beith David based on his position as Chairman of Beith David's Board.

### B. Advocate-Witness Rule

California Rules of Professional Conduct, rule 3.7 provides: "A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: [¶] (1) the lawyer's testimony relates to an uncontested issue or matter; [¶] (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) the lawyer has obtained informed written consent from the client."

In finding disqualification is unwarranted under the advocate-witness rule, the trial court first noted that the Board executed an informed written consent as to the potential dual nature of Farivar's role as a Board member and counsel for Beith David. The court then found the "risk of confusing the trier of fact is low" because "should the FACC proceed to trial it will be a bench trial."[8] The court stated it "is not concerned that it will confuse [ ] Farivar's argument as evidence." The court also noted Beith David "has a strong interest in counsel of its choice coupled with avoiding duplicate expense and time-consuming efforts in proceeding with [co-counsel] Ross LLP as the main advocate."[9]

---

[8] The FACC is the only pleading that remains to be litigated in the proceedings below. The court granted Beith David's motion for judgment on the pleadings as to the petition . It also sustained Beith David's demurrer, without leave to amend, to appellants' related complaint filed two months after the petition.

[9] The Board also retained Ross LLP as co-counsel. Farivar has done most of the work on the case, however, because he agreed to front the fees and costs required to defend Beith David.

We conclude the trial court was well within its discretion in declining to disqualify Farivar based on the advocate-witness rule. It balanced the competing interests and ultimately concluded the risk of confusing the trier of fact (i.e., the court) was low and outweighed by the competing policies of ensuring parties have representation by counsel of their choice and avoiding duplicate expenses.

Appellants repeatedly assert that Farivar will be "a star factual witness" and "he will likely be on the witness stand longer than any other witness." We reject these unsubstantiated claims. As noted above, the FACC is the only pleading that remains to be litigated. And, according to Beith David, it can prove their case based on other witnesses who have submitted declarations, subpoenaed bank records, and Beith David's internal Board minutes. Beith David claims Farivar's testimony is only incidental, and for that testimony, Ross LLP is available to conduct the examination. Moreover, appellants have not identified a single material factual issue for which they would call Farivar as a hostile witness or need to cross-examine him. If, for some reason, Farivar's testimony plays a bigger role in the trial than anticipated, the court recognized that the disqualification issue could be raised again at trial. This ruling was not an abuse of discretion.

## DISPOSITION

The order denying appellants' anti-SLAPP motion is reversed in part. The allegations of overturning the election in support of the second, third, fifth, seventh, tenth, fourteenth, fifteenth, and seventeenth causes of action shall be stricken from the FACC. On remand, the trial court shall determine whether any of those causes of action fail as a matter of law. The trial

22

court shall also determine whether appellants are prevailing parties on the anti-SLAPP motion for purposes of attorney's fees. The order denying appellants' motion to disqualify Farivar and his law firm is affirmed. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

TAMZARIAN, J.

We concur:

MORI, Acting P. J.

COGLIATI, J.*

---

\* Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23